IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

ADAM LEE WHEELER,

|  |  |  |
|---|---|---|
| | Plaintiff, | |
| v. | | OPINION and ORDER |
| FRANK BISIGNANO,[1] | | 23-cv-850-wmc |
| Commissioner of Social Security, | | |
| | Defendant. | |

---

Plaintiff Adam Wheeler seeks judicial review of a final decision of defendant Frank Bisignano, Commissioner of Social Security, holding that he was not disabled within the meaning of the Social Security Act. Specifically, Wheeler argues that the case should be reversed and remanded because Administrative Law Judge Joseph Jacobson ("ALJ") erred in rejecting the opinion of Dr. Jesse Frey, a consulting psychologist, that Wheeler had marked limitations in his abilities to respond appropriately to supervisors and coworkers and withstand routine stress due to a diagnoses of "antipersonality disorder" and "mild, recurrent major depressive disorder." While the ALJ took some shortcuts in explaining his reasons for discounting Dr. Frey's opinion, he nevertheless said enough to demonstrate his consideration of the relevant evidence and provide adequate reasons for finding that opinion less persuasive then those of two other psychologists. Accordingly, the court must affirm the commissioner's decision.

---

[1] The court has amended the caption to reflect Bisignano's appointment as Commissioner. Fed R. Civ. P. 25(d).

BACKGROUND

Wheeler originally applied for supplemental security income in November 2020, when he was 35 years old, alleging that he had been disabled since birth due to various physical and mental impairments. However, only Wheeler's mental impairments are relevant to his appeal. (AR 17 and 27.)[2]

In February 2021, at the request of the state disability agency, Wheeler was evaluated by Jesse Frey, Psy.D., a psychologist. (AR 1464-69.) The results of Frey's mental status examination were largely unremarkable. In particular, Dr. Frey noted Wheeler had an average memory that was largely intact and was not easily distracted. Thus, while Dr. Frey opined that Wheeler had no limitations in his ability to understand remember and carry out simple instructions, and only mild limitations in concentration, persistence, or pace ("CPP").

Still, Frey diagnosed Wheeler with antisocial personality disorder and mild, recurrent major depressive disorder, explaining that:

> Adam struggles to control his mood, anger, and impulses. He has a history of behaving in reckless, irresponsible ways. He tends to blame other for cause his b[ad] behavior, such as blaming his probation officer for making him upset and causing him to relapse. When discussing his assault on a group of college guys at a bar, he discusses it rather matter-of-fact-like, and does not indicate any remorse. Personality Disorders are not well treated by any medications, symptoms can be reduced but the behavioral issues originate in personality. The combination of a wide variety of diagnosis and poor medication response to numerous trials is highly suggestive of a personality disorder. Based on Adam's difficulty I would describe this as a moderately severe case.

(AR 1468.) These disorders led Frey to opine that Wheeler would have marked limitations in his ability to respond appropriately to supervisors and coworkers, marked limitations in his

---

[2] Record cites in this opinion are to the administrative record located at dkt. #6.

ability to withstand routine work stress, and moderate limitations in his ability to adapt to changes. (AR 1468-69.)

By comparison, Dr. Deborah Pape, a psychologist also hired by the state disability agency who reviewed Wheeler's application on March 2, 2021, opined that Wheeler had a number of *moderate* limitations in all functional areas, explaining that he: (1) had functional limitations from major depressive disorder that could impact his CPP at times; (2) had some difficulty being around other people for extended periods of time and would do better in jobs without frequent public contact; and (3) was incapable of work requiring changing tasks from day to day but instead needed a fairly regular set of job duties and expectations. (AR 98-100, 102-03.) With respect to Dr. Frey's opinion in particular, Dr. Pape rejected Frey's findings of *marked* limitations, which "seem[ed] overestimated based on [Wheeler's] statements," especially so because "at all appts there is no note of [Wheeler] having [behavior and] anger issues." (AR 99.) Rather, Pape noted that Wheeler was pleasant and cooperative at his consultative examination, and he had no current legal issues relating to mood or anger problems. (*Id.*)

On June 6, 2022, Wheeler noted in his own function report that he has problems getting along with others, does not handle stress well, and gets angry for no reason, resulting in him not speaking with any of his siblings, having issues with authority figures and law enforcement, and being fired from several jobs because of conflict. (AR 351-53.) However, on January 4, 2023, a third state agency psychologist, Dr. Shanna Ratzburg, offered generally the same opinions as Dr. Pape, concluding that Wheeler was able to understand, remember, concentrate, and persist in the completion of simple, routine tasks; would do better in jobs that do not

require frequent public contact; can work in a setting with infrequent job/task changes; and would benefit from a fairly regular set of job duties and expectations.  (AR 124.)

After the local disability agency denied Wheeler's claim initially and on reconsideration, he requested an administrative hearing.  The ALJ held that hearing via telephone on July 6, 2023, during which Wheeler amended his alleged disability onset date by an additional year to November 19, 2019.  Moreover, Wheeler's hearing testimony focused exclusively on his physical pain and impairments, with the exception of his statement that he had no difficulties being in crowds or with other people in a store.  (AR 42-58.)

In an August 7, 2023 decision, the ALJ found Wheeler not disabled.  (AR 17-29.)  Even so, the ALJ found that Wheeler had the following severe impairments, but not presumptively disabling:  (1) degenerative disc disease of the lumbar spine; (2) antisocial personality disorder; and (3) major depressive disorder.  (AR 19.)  Even so, the ALJ found that Wheeler had the residual functional capacity ("RFC") to perform work at the light level of exertion with a number of physical and mental limitations.  (AR 21.)  Based on testimony from a vocational expert ("VE"), the ALJ concluded that Wheeler had no past relevant work but could perform other jobs available in significant numbers in the national economy, including as a mail clerk, routing clerk, and router.  (AR 28, 60-61.)  However, during questioning by Wheeler's attorney, the VE testified that a person unable to effectively interact with a supervisor on a sustained basis would not be able to perform any of those jobs.  (AR 63.)

The Appeals Council denied Wheeler's request for review on October 30, 2023, so the ALJ's decision became the final decision of the commissioner.  (AR 3.)  On appeal, Wheeler challenges the ALJ's findings as to his mental limitations, including:

- low stress work, defined as having only occasional decision making and changes in work setting;

- no piece work, fast moving assembly line type work, or strict hourly production requirements;

- occasional interaction with the public; and

- superficial interactions with coworkers and supervisors.

(AR 26.)


ANALYSIS

The question before this court on review is whether the ALJ's decision is supported by "sufficient evidence to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). This standard requires only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. The ALJ must also identify the relevant evidence and build a "logical bridge" between that evidence and the ultimate factual determination. *Moon v. Colvin*, 763 F.3d 718, 721 (7th Cir. 2014). Wheeler's sole claim on appeal is that the ALJ erred in rejecting Dr. Frey's opinion regarding his marked mental limitations. Specifically, Wheeler argues that reversal is required because the ALJ did not fairly apply the relevant evaluation criteria related to supportability and consistency, failed to adequately explain his conclusions, and mischaracterized or ignored evidence favorable to Wheeler's claim.

Because Wheeler filed his claim after March 27, 2017, the ALJ was required to evaluate Dr. Frey's opinion under the commissioner's updated regulation for evaluating medical opinions. 20 C.F.R. § 404.1520c (evaluating opinion evidence for claims filed after March 27, 2017). Under this regulation, an ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical

5

finding(s), including those from [the claimant's own] medical sources." 20 C.F.R. § 404.1520c(a). Instead, the ALJ is to consider the following factors when determining the proper weight to apply to the opinion or prior administrative finding: (1) supportability; (2) consistency; (3) the relationship with the claimant, including the length, purpose, and extent of the treatment relationship, the frequency of examinations, and the examining relationship; (4) specialization; and (5) other factors brought to the attention of the commissioner. 20 C.F.R. § 405.1520c(c). While the ALJ must consider all of these factors, he is required to explain only how he considered supportability and consistency. 20 C.F.R. § 404.1520c(b).

Here, the ALJ explained that Dr. Frey's opinions were unpersuasive because they: (1) somewhat understate Wheeler's limitations with concentration, persistence, or pace; (2) overstate Wheeler's social functioning and adaptation limitations; and (3) are inconsistent with the available evidence showing "some problems with interacting with others, concentration, persistence, or pace, and adapting or managing himself, but also little in the way of specialized mental health treatment, mostly unremarkable mental status examinations, and no instances of inpatient psychiatric care." (AR 26.) Instead, the ALJ found more persuasive the opinions of the reviewing state agency psychologists, which were "mostly consistent with the available evidence" showing "little in the way of consistent mental symptoms and limitations" and "treatment with medication by [Wheeler's] primary care provider." (AR 27.)

Nevertheless, Wheeler argues that the ALJ (1) gave only cursory consideration to the supportability of Frey's opinion and its consistency with other evidence in the record, and (2) failed to identify any evidence contradicting the marked limitations he assessed for Wheeler. In contrast, Wheeler points out Dr. Frey twice noted his intentionally starting fights -- such as violating his parole by starting a bar fight -- for which he showed no remorse. (AR 1464-65,

6

1468.)  Wheeler contends that the ALJ also ignored the following, additional evidence supporting his claim that he has problems interacting with others, adapting to change, and managing himself:

- Wheeler was hospitalized for suicidal ideation on April 12, 2008.  (AR 1271.)

- On June 11, 2008, psychiatrist Dr. Kenneth Burg wrote that Wheeler "has been hospitalized more than 15 times since the age of 5" and "reports having attempted suicide more than 10 times, the most recent event in 2006 via hanging.  (AR 514.)

- On April 13, 2011, psychology supervisor Dr. Scott Rubin-Asch noted Wheeler reported that his behavior became out of control and violent during his childhood, and he was hospitalized for a long period of time, partly due to making threats toward his mother.  (AR 617.)

- Wheeler was admitted to a hospital-based, inpatient behavioral health unit in January 2012, due to a plan to jump off a bridge.  (AR 1271.)

- Wheeler was again admitted to an inpatient behavioral health unit on March 7, 2013, at which time he expressed suicidal ideation with a plan to hang himself. (AR 1270-72.)

- On March 26, 2018, Dr. Kurt Weber, a treating psychologist, wrote that Wheeler "reported having been dismissed from virtually every position of employment he has ever had as a result of excessive absences, which he attributed to mental health concerns and poor performance."  (AR 754.)  Dr. Weber also wrote Wheeler "experiences extreme anger outbursts and that they can be destructive."  (AR 752.)

- On July 19, 2018, Dr. Mark Bjerke noted that Wheeler "endorses PTSD and anxiety-like symptoms, [and is] quick to anger that seemingly comes out of no where to the point where he is punching the wall.  [Wheeler also] states [that] he has a difficult time slowing his thoughts down and feels emotions strongly." (AR 776.)

- Wheeler attended six, individual therapy sessions beginning in January 2019, and eight supervised visits with his children between August 14, 2019, and January 15, 2020.  (AR 24-25, 1519-35.)

- Wheeler sought treatment at an emergency department clinic on January 4, 2022, at which he asked for a refill of Xanax, tramadol, and Ambien until he

7

could establish care with a new primary care physician the next month.  (AR 25, 1500.)

- Wheeler obtained prescriptions for Cymbalta and Ambien on January 27, 2022.  (AR 25, 1507.)

While Wheeler certainly appears to have had significant mental health problems and treatment well *before* his alleged disability onset date of November 19, 2019, the ALJ accurately (albeit briefly), noted Wheeler's less specialized *and* more sporadic mental health treatment closer to and during the period relevant to his disability claim.  (*See* AR 25.)  Indeed, the record shows that Wheeler had no inpatient psychiatric care after 2013, attended only six therapy sessions leading to supervised visits with his children, and obtained some psychotropic medications from an emergency department because he had not yet established care with a new primary physician.  Elsewhere in his opinion, the ALJ also addressed Wheeler's subjective complaints, the objective medical evidence, and the state consultants' opinions.  In particular, he reasonably found that despite Wheeler's subjective complaints of disabling mental limitations, his symptoms had been effectively managed with medications in the time leading up to and during the relevant disability period, as evidenced by mental status evaluations during which medical providers observed Wheeler as having good motivation, normal mood and affect, normal behavior, and the ability to focus on relevant topics.  (AR 24 (citing AR 791-1698).)  This included Wheeler's cooperative behavior and clear thought process during Dr. Frey's examination in February 2021.  (AR 24-25.)  Therefore, contrary to Wheeler's contentions, the ALJ did not ignore or cherry pick the relevant medical and subjective evidence.

Wheeler also faults the ALJ for not supporting or explaining his statement that Dr. Frey *understated* his CPP limitations, but that finding did not hurt Wheeler's claim of disability.  Indeed, the ALJ ascribed *more restrictive* mental limitations based at least in part on this finding.

*See Dudley v. Berryhill*, 773 F. App'x 838, 842 (7th Cir. 2019) (claimant not harmed if ALJ finds claimant more limited than what evidence would suggest); *Olson v. Saul*, No. 20-cv-672-jdp, 2021 WL 1783136, at *3 (W.D. Wis. May 5, 2021) ("[E]ven if the ALJ failed to adequately support her more restrictive RFC, that error wouldn't entitle Olson to a remand.").

In sum, although the ALJ could have addressed Wheeler's mental health symptoms and limitations in greater detail, his discussion is sufficient and his conclusions are reasonably supported by the evidence.  Importantly, Wheeler also offers no additional, evidence-based restrictions that the ALJ should include were he directed to revisit Dr. Frey's opinion on remand.  *See Sosh v. Saul*, 818 F. Appx 542, 546 (7th Cir. 2020) (citing *Loveless v. Colvin*, 810 F.3d 502, 508 (7th Cir. 2016)) ("A claimant who does not identify medical evidence that would justify further restrictions is not entitled to remand.").  Accordingly, this court must uphold the ALJ's decision.

## ORDER

IT IS ORDERED that the decision denying disability benefits to plaintiff Adam Lee Wheeler is AFFIRMED.  The clerk of court is directed to enter judgment in favor the acting commissioner and close this case.

Entered this 27th day of May, 2025.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge